# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00056-JAW |
| | ) | |
| RAFAEL LUGO | ) | |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

An incarcerated individual moves for compassionate release to home confinement and a period of supervised release under 18 U.S.C. § 3582(c)(1)(A)(i) without first exhausting his administrative remedies. Because the Court determines that the exhaustion provision of 18 U.S.C. § 3582(c)(1)(A) is mandatory, the Court dismisses his request without prejudice.

## I. PROCEDURAL BACKGROUND

On December 19, 2019, the Court sentenced Rafael Lugo to forty-one months of imprisonment, three years of supervised release, a $2,000 fine, and a $100 special assessment for possession with the intent to distribute heroin and cocaine, a violation of 21 U.S.C. § 841(a)(1). *Min. Entry* (ECF No. 48); *J.* (ECF No. 49). On April 6, 2020, Mr. Lugo filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Mot. for Compassionate Release* (ECF No. 52) (*Def.'s Mot.*). On April 8, 2020, the Government responded in opposition. *Gov't's Opp'n to Def.'s Mot. for Compassionate Release* (ECF No. 53) (*Gov't's Opp'n*).

## II. POSITIONS OF THE PARTIES

### A. Rafael Lugo's Motion

Mr. Lugo says that he is "now incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York (a BOP facility)." *Def.'s Mot.* at 1. Mr. Lugo "moves pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) that this Court modify his sentence and immediately release him to home confinement and a period of supervised release." *Id.* In support, Mr. Lugo states that "[t]he unprecedented threat of COVID-19 could not have been foreseen at sentencing, and poses extraordinary risks to [Mr.] Lugo's health" as "[t]he virus thrives in densely packed populations" such as the MDC, and "the MDC is ill-equipped to contain the pandemic and prevent COVID-19 from infecting [Mr.] Lugo." *Id.* Mr. Lugo argues that "[h]is kidney problems make him . . . especially vulnerable to the deadly risks of COVID-19." *Id.*

Mr. Lugo states that while he admittedly has not satisfied the exhaustion provisions of section 3582(c)(1)(A), which apply "[u]nder normal circumstances," he "file[d] this motion now in light of the urgent nature of this matter." *Id.* at 2. Mr. Lugo contends that courts have discretion to determine what constitutes "extraordinary and compelling" reasons warranting sentence reduction within the meaning of section 3582(c)(1)(A). *Id.* at 2-3 (quoting *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019)).

Mr. Lugo represents that "[t]his Court need not and should not wait for [him] to exhaust administrative remedies . . . as this will almost assuredly exacerbate an already impending public health catastrophe in our jails and prisons, and pose a

2

particular and real danger to [Mr.] Lugo." *Id.* at 3. He puts forward the proposition that "[f]ederal courts have found that they can hear applications prior to the expiration of 30 days (or the exhaustion of administrative remedies) if there is an emergency," which he says "accords with general administrative law principles and the exception to administrative exhaustion requirements in numerous statutory schemes." *Id.*

Mr. Lugo quotes the United States Supreme Court's language in *Bowen v. City of New York*, 476 U.S. 467 (1986), that "'[a]pplication of the exhaustion doctrine is intensely practical' and should 'be guided by the policies underlying the exhaustion requirement.'" *Def.'s Mot.* at 4 (quoting *Bowen*, 476 U.S. at 484). Mr. Lugo contends that "[w]hen coupled with the impending crisis, the unique exhaustion provision in § 3582(c)(1)(A) places [Mr.] Lugo's case squarely within *Bowen*'s holding." *Id.* He states that the exhaustion requirement in section 3582(c)(1)(A) is not jurisdictional, but "merely controls who (the [Bureau of Prisons (BOP)] or the Defendant) moves for compassionate release before the Court, and when (now or long after COVID-19 has already swept through MDC)." *Id.* at 5. He states that "Congress' desire to avoid blind adherence to this 'exhaustion' requirement is evidenced by" the fact that a court may act under section 3582(c)(1)(A) if thirty days have lapsed since an incarcerated individual petitioned the warden of his or her individual facility, even though the incarcerated individual did not exhaust his or her administrative rights. *Id.*

Mr. Lugo states that "it is only a matter of time before COVID-19 spreads in the prisons," particularly in New York City, where "[t]he COVID-19 pandemic

3

continues to roil . . ..." *Id.* at 6-7. He argues that he "is particularly vulnerable to COVID-19" because of "conditions includ[ing] blood in urine, kidney swelling and multiple bilateral kidney stones up to 8mm in size." *Id.* at 9. He argues that at MDC, he "cannot practice regular hand hygiene, and . . . cannot effectively socially distance himself . . .." *Id.* Mr. Lugo represents that if released, he will live with his sister in Lewiston, Maine. *Id.* at 10.

### B. The Government's Opposition

The Government argues that under section 3582(c)(1)(A), administrative exhaustion is mandatory and contains no exceptions beyond those contained in the statute. *Gov't's Opp'n* at 4-9. The Government then argues that the Court should deny Mr. Lugo's motion even if he "had satisfied the administrative exhaustion requirement" in light of the fact that he has not submitted medical records supporting his contention that his medical conditions make it more likely that he will develop COVID-19 or suffer aggravated symptoms, "the seriousness of his crime, the amount of time he has served, and his personal history and characteristics . . .." *Id.* at 9. The Government then states that it is not clear that remaining in BOP custody makes it more likely that Mr. Lugo will contract COVID-19. *Id.* at 10-14.

## III. LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A)(i) states:

The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

4

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . (i) extraordinary and compelling reasons warrant such a reduction . . ..

"[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions;" however, "statutory exhaustion provision[s] stand[] on a different footing," and where a statutory exhaustion provision is mandatory, it "[foreclose[es] judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

While some statutory preconditions to relief are jurisdictional (and thus, if not met, bar consideration of the requested relief on its merits), others constitute mandatory claim-processing rules which—while mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it"—may be waived or forfeited by the adverse party. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (alteration in original) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)).

## IV. DISCUSSION

In the past weeks, federal district courts across the nation have faced a flurry of requests for compassionate release under 18 U.S.C. § 3852(c). The sudden onset of the COVID-19 pandemic and its rapid rate of growth—including within BOP facilities—means that most, if not all, these motions, when they are brought by incarcerated individuals rather than the BOP Director, have not had the time to comply with the exhaustion requirement of section 3582(c). This is such a case. The incarcerated individual here, Mr. Lugo, acknowledges that he has not satisfied the

5

exhaustion provision of section 3582(c), but requests that the Court grant him relief irrespective of his failure to exhaust. *Def.'s Mot.* at 2-3.

The circuit courts are split on whether the limitations of section 3582(c) are jurisdictional. The Fifth, Ninth, and Tenth Circuits have found they are. *See United States v. Spears*, 824 F.3d 908, 912-16 (9th Cir. 2016) (affirming the district court's dismissal on jurisdictional grounds where the movant did not meet the requirements of section 3582(c)(2)); *United States v. Spaulding*, 802 F.3d 1110, 1124 (10th Cir. 2015) (noting that it was bound by a previous panel's "holding that § 3582(c) acts as a jurisdictional limitation on the ability of district courts to alter previously imposed sentences of imprisonment"); *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) ("The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582"). The Seventh Circuit has found they are not. *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015) (stating that "§ 3582 is not part of a jurisdictional portion of the criminal code" and is not "phrased in jurisdictional terms"). The First Circuit has not yet weighed in on the issue, though in *United States v. Griffin*, 524 F.3d 71 (1st Cir. 2008), it quoted with seeming approval the Seventh Circuit's pre-*Taylor* statement that "[Section] 3582(c) limits the substantive authority of the district court . . . [and] is a real jurisdictional rule rather than a case-processing requirement." *Griffin*, 524 F.3d at 84 (alterations in original) (quoting *United States v. Smith*, 438 F.3d 796, 799 (7th Cir. 2006), *overruled by Taylor*, 778 F.3d 667).

The Court does not reach this question because even assuming the exhaustion provision of 3582(c) is non-jurisdictional, the result is the same. *See United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (declining to reach precisely this question where the motion under section 3582(c) was not brought by the BOP and the incarcerated individual had not exhausted his administrative remedies). "[M]andatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 136 S. Ct. at 1856.

The Court regards the language of section 3582(c) as both clear and mandatory. Section 3582(c) says that "[t]he Court may not modify a term of imprisonment once it has been imposed except" it may do so in certain delineated circumstances if the motion is brought by the BOP Director or the incarcerated individual seeking relief has exhausted his or her administrative remedies. There is no exception to this requirement in the language of section 3582(c), and the Court cannot read one into the section. *See Ross*, 136 S. Ct. at 1857 (stating that "mandatory exhaustion statutes . . . foreclose[e] judicial discretion"). The Government timely raised and objected to Mr. Lugo's failure to exhaust. *Gov't's Opp'n* at 1. The Court must therefore dismiss Mr. Lugo's motion for failure to comply with the exhaustion provision. Supporting the Court's conclusion, the first circuit court to provide guidance on this issue during the COVID-19 crisis stated that failure to comply with section 3582(c)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this

point." *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Mr. Lugo raises the Second Circuit's decision in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), for the proposition that "administrative exhaustion requirements can be waived if delay would cause irreparable injury." *Def.'s Mot.* at 3-4 (citing *Washington*, 925 F.3d at 119). But as the Government correctly states, *Washington* is inapposite because it "involved the invocation of a judge-made exhaustion doctrine," *Gov't's Opp'n* at 7, as opposed to the statutory exhaustion requirement at issue here. *See Washington*, 925 F.3d at 116 (stating that the statute at issue in that case "does not mandate exhaustion of administrative remedies"). While as of the date of this decision, the district courts that have confronted this issue are closely divided, the trend appears to be moving toward this Court's view that *Washington* is inapposite; furthermore, those cases that disagree do not discuss the distinction between statutory and judge-made exhaustion requirements.[1]

---

[1] *See United States v. Epstein*, Crim. Action No. 14-287 (FLW), 2020 WL 1808616, at *4 n.4 (D.N.J. Apr. 9, 2020) (stating that the line of cases asserting that the exhaustion requirement of section 3582(c) is waivable is not persuasive "because [*Washington v.*] *Barr* dealt only with a judicially created exhaustion requirement, not a statutory one"); *United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Holden*, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *9 (D. Or. Apr. 6, 2020); *United States v. Woodson*, No. 18-cr-845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020). *But see United States v. McCarthy*, Nos. 3:17-CR-0230 (JCH), 3:92-CR-0070 (JCH), 2020 WL 1698732, at *3-4 (D. Conn. Apr. 8, 2020) (noting that the "general[] three bases for waiver of an exhaustion requirement" are all present in the context of COVID-19); *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2-3 (S.D.N.Y. Apr. 1, 2020). Another case, *Miller v. United States*, Criminal Case No. 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020), appears to agree with those courts concluding that *Washington* suggests the exhaustion provision of section 3582(c) may be waived. However, in *Miller*, the District Court found that the incarcerated individual requesting relief had properly exhausted his administrative remedies and raised *Washington* in dicta as an alternative ground for its holding. *Id.*

The Court is similarly unconvinced by Mr. Lugo's argument about *Bowen v. City of New York*. In that case, a group of individuals who had been denied disability benefits by the Social Security Administration (SSA) and alleged that the SSA had a secret and illegal internal policy that "led to routine denials of benefits to eligible claimants" brought a class action challenging this policy. 476 U.S. at 473. In certifying the class, the District Court waived the administrative exhaustion requirement for many class members. *Id.* at 475-76. The Supreme Court affirmed. *Id.* at 487.

The reasoning in *Bowen* is inapplicable here. In *Bowen*, "[t]he claims in th[e] lawsuit [we]re collateral to the claims for benefits that class members had presented administratively," as the underlying challenge went not to the denial of benefits by the SSA, but to the SSA's "failure to follow the applicable regulations." *Id.* at 483. The Supreme Court cautioned its holding "does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings" and clarified that the claimants in *Bowen* "stand on a different footing from one arguing merely that an agency incorrectly applied its regulation." *Id.* at 485. Here, Mr. Lugo is not bringing a claim collateral to the claim for which he is required to exhaust; rather, he is asking the District Court to weigh in on the merits of his administrative claim before the administrative agency has had an opportunity to do so. This is not the type of failure-to-exhaust that citation of *Bowen* may excuse.

Mr. Lugo also raises two district court cases as support for his argument that "[f]ederal courts have found that they can hear applications prior to the expiration of

30 days (or the exhaustion of administrative remedies) if there is an emergency." *Def.'s Mot.* at 3 (citing *Order*, *United States v. Huneeus*, No. 1:19-cr-10117-IT-7 (D. Mass. Mar. 17, 2020), ECF No. 642; *Order*, *United States v. Arberry*, No. 15-CR-594 (JPO) (S.D.N.Y. Nov. 11, 2019), ECF No. 84. But in both cases, the submissions on which the Courts relied in granting relief under section 3582(c) are not available on the public docket, so the Court cannot evaluate whether the incarcerated individuals in those cases satisfied the exhaustion requirement of section 3582(c). Furthermore, in *Arberry*, the Government consented to the grant of compassionate relief, *Order*, *Arberry*, No. 15-CR-594 (JPO), which places it in a substantially different posture than the instant matter.

Because the Court is concerned that the exhaustion requirement of the statute is mandatory and he has not complied with it, the Court may not reach the merits of Mr. Lugo's motion. The Court's decision does not suggest how the BOP should address Mr. Lugo's request for compassionate release and the reported cases reflect that the BOP has supported some motions and opposed others. This decision does mean that the BOP, which possesses greater knowledge of the COVID-19 conditions within its prisons and of Mr. Lugo's specific situation, must be given the first opportunity to respond to Mr. Lugo's request for release before it comes to this Court.

## V.  CONCLUSION

The Court DISMISSES without prejudice Rafael Lugo's Motion for Compassionate Release (ECF No. 52).

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 10th day of April, 2020