UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GERALD PRICE,<br>Defendant. | C.A. No. 18-110-JJM-PAS |

ORDER

Defendant Gerald Price moves for a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A). ECF No. 120. The Court sentenced Mr. Price to sixty months of incarceration after he pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine base and distribution of cocaine base. He has served over half his sentence and his current expected date of release is on November 18, 2022. He seeks release because of his increased risk of serious harm if he were to contract COVID-19.

I.  STANDARD OF REVIEW

Under 18 U.S.C. § 3582(c) and U.S.S.G. § 1B1.13, once a defendant shows that he has exhausted the Bureau of Prisons' ("BOP") administrative process for compassionate release, or thirty days have lapsed without a decision, whichever occurs first, a district court may reduce a defendant's term of imprisonment provided the court determines: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) favor

release.  *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *see also United States v. Miamen*, No. CR 18-130-1 WES, 2020 WL 1904490, at *2 (D.R.I. Apr. 17, 2020). The defendant carries the burden on a motion for compassionate release. *Miamen*, 2020 WL 1904490 at *2.

II. DISCUSSION

    A. Extraordinary and Compelling Reasons

In 2006, the Sentencing Commission issued a policy statement with Application Notes that reiterates, without further definition, that reductions of sentences are authorized for "extraordinary and compelling reasons." U.S.S.G. § 1B1.13. The Application Notes to § 1B1.13 offer more guidance, setting forth four circumstances in which there might exist extraordinary and compelling reasons to grant a request for compassionate release: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). While "[r]ehabilitation of the defendant alone" cannot constitute extraordinary and compelling reasons, the "Other Reasons" application note authorizes release for "an extraordinary and compelling reason other than, or in combination with, the [medical, age, or familial] reasons described in subdivisions (A) through (C)." 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.1(D), 3.

Many courts have found that the risk of getting a serious illness from COVID-19 while incarcerated is an extraordinary and compelling reason warranting a compassionate release. *See United States v. Bischoff*, 460 F. Supp. 3d 122, 125 (D.N.H. 2020) (collecting cases); *see also United States v. Rodriguez*, 451 F. Supp. 3d 392, 394 (E.D. Pa. 2020) (recognizing that "nothing could be more extraordinary and compelling than this pandemic"). To this end, courts have examined such motions with an eye toward each defendant's medical condition and risk. *See, e.g., United States v. Sawicz*, 453 F. Supp. 3d 601, 605 (E.D.N.Y. 2020)

Mr. Price has presented compelling reasons for compassionate release.[1] He alleges that his "weight alone places him at a higher risk of severe illness or death from the virus . . . [and that his risk is] further increased due to his medical condition of pre-diabetes." ECF No. 120 at 5.

The Centers for Disease Control and Prevention ("CDC") classifies obesity—defined as having a body mass index ("BMI") of thirty or above—as an underlying health condition that puts an individual at "increased risk of severe illness from the virus that causes COVID-19." CDC, *People with Certain Medical Conditions*, Aug. 14, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Courts have highlighted this relationship, with one district court opinion stating:

> A number of recent studies have further investigated the link between obesity and severe illness and death from COVID-19. One study discovered an "increasing risk of death with degree of obesity." In other

---

[1] Warden Derek Edge of the Metropolitan Detention Center denied Mr. Price's request for compassionate release on June 30, 2020. ECF No. 120 at 16.

words, the higher a person's BMI is, the greater the risk that COVID-19 will prove fatal for that person. Another recent study of nearly 7,000 COVID[-19] patients found that obesity is associated with a 2-4 times greater risk of death, especially for men and all people under 60 years old.

*United States v. Perkins*, No. 14-CR-104-LM-1, 2020 WL 4783558, at *4 (D.N.H. Aug. 18, 2020) (citations and footnotes omitted). Mr. Price weighs 243 pounds and is 6 feet, 1 inch tall. ECF No. 123-3 at 3. He has a BMI of 32.1, placing him in the obese category and putting him at an increased risk of serious harm if he contracted COVID-19. The government concedes that "[b]eing obese increases one's 'risk of severe illness from COVID-19.'" ECF No. 123-1 at 4.

A newly published study shows that detainees living in congregate settings are at increased risk for COVID-19 despite implementation of mitigation measures. Parsa Erfani et al., *COVID-19 Testing and Cases in Immigration Detention Centers, April-August 2020*, JAMA, Oct. 29, 2020 ("Individuals detained by US Immigration and Customs Enforcement (ICE) live in congregate settings, and thus have a disproportionately high risk of contracting coronavirus disease").[2]

National trends about the spread of coronavirus are climbing. "Nationally, surveillance indicators tracking levels of SARS-CoV-2 virus circulation and associated illnesses have been increasing since September. The percentage of deaths due to pneumonia, influenza and COVID-19 (PIC) increased during the first two weeks of October. Both COVID-19 related hospitalizations and PIC mortality for the most recent weeks may increase as more data are received." CDC, *Key Updates for*

---

[2] https://jamanetwork.com/journals/jama/fullarticle/2772627.

4

*Week 44, ending October 31, 2020*, Nov. 6, 2020, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html.

The Court therefore finds that Mr. Price has shown extraordinary and compelling reasons to grant his motion.

B.   Section 3553 Factors Analysis

The Court next must analyze the 18 U.S.C. § 3553 factors and determine whether Mr. Price poses a danger to the public. The government opposes Mr. Price's motion, asserting that he poses "a danger to the safety of others and the community" if released. ECF No. 123-1 at 6.

After reviewing Mr. Price's Presentence Investigation Report (ECF No. 95) again, reading the sentencing transcript (ECF No. 107), and considering the § 3553 factors, the Court determines that it is appropriate to release Mr. Price. First, at thirty-five years old, the risk that Mr. Price will reoffend has diminished. *See* U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* (2017). Second, Mr. Price does not have a history of violent criminal activity. ECF No. 95 at 6-13. His criminal history includes mostly low-level drug charges. *Id.* Third, he has had no disciplinary infractions while incarcerated and has qualified and earned acceptance into the Residential Drug Abuse Program. ECF No. 120 at 36.

As this Court said at sentencing,

> Mr. Price, *** you had a rough go of it early on with your dad leaving and the conditions that you lived with. I can't imagine what that's like and what effect that has had on you, *** [but] you can do better than that. We expect more from you than that. Your mom and your grandma and others expect more than that, and society expects more from that— from you, Mr. Price. *** [You are] [g]oing to be 35 this year. *** Dude,

5

> it's got to end. *** [E]veryone tells me that you are a very decent person. Your drug dealing hasn't shown that to the world, unfortunately. *** You've hidden your light under a bushel of that by committing these crimes. The great civil rights leader of our time, Bryan Stevenson, *** tells us, Mr. Price, that every one of us is better than the worst thing we've done; and I know you're a better person than this history of low-level drug dealing that you've spent the last decade and a half. I know you're a better person than that. Your mom knows you're a better person. You're grandma knows you're a better person than that. You've got to prove it.

ECF No. 107 at 25-27.

Mr. Price has strong family support. In a letter to the Court, Mr. Price's mother states that she will do her "part as his mother to ensure that he stays focused on the importance of doing what is right and best for his children and family." ECF No. 120 at 37. Mr. Price's sister, a mother of four who recently moved back to Providence, writes:

> "The presence of a familial male influence is very much needed in our lives. My oldest son just turned 13 and he's in a stage that me as a woman cannot relate to. He needs that bond of his uncle as someone that he can turn to and rely on about the things that "Mom" just doesn't understand. My brother has vowed to help me in the ways he sees I need it most."

*Id.* at 39.

Mr. Price plans to live with his father in Cranston, Rhode Island. *Id.* at 40. He hopes to reengage with his children. *Id.* 13. Finally, and importantly, he has "employment pending." *Id.*

Mr. Price's criminal history and involvement with drugs causes the Court concern. But the Court finds that having served over two years of a sentence, and

6

with adequate supervision during his four years of supervised release, Mr. Price's release does not pose a risk to the public.

In considering all the § 3553 factors of punishment, deterrence, public safety, rehabilitation, and the personal characteristics of Mr. Price, the Court finds that with two years of his sentence complete, Mr. Price's time served in prison is appropriate and consistent with the § 3553 factors.

### III. CONCLUSION

The Court therefore:

1. GRANTS Mr. Price's Motion for Compassionate Release. ECF No. 120.

2. ORDERS Mr. Price, before release, to submit a reentry plan to U.S. Probation for approval.

3. REDUCES Mr. Price's sentence to time served once U.S. Probation has approved his reentry plan.

4. ORDERS the Bureau of Prisons to release Mr. Price once U.S. Probation has approved his reentry plan to begin to serve his four-year term of supervised release.

5. ORDERS his four-year term of supervised release as originally imposed but modified so that Mr. Price is ordered to remain self-quarantined at home for a period of fourteen days when he is released, and to serve the first six months of his supervised release on home confinement with RF monitoring restricted to his residence every day. Exceptions to home detention: employment, education, religious services, medical treatment, substance

abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities as pre-approved by the officer. The RF monitoring equipment is to be installed after the 14-day quarantine period.

IT IS SO ORDERED.

*(signed)* John J. McConnell, Jr.
Chief Judge
United States District Court

November 10, 2020